UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LASHELL L. on behalf**
**of D.J., a minor,**

      **Plaintiff,**

    v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 1:19-cv-20033
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff on behalf of D.J., Plaintff's minor daughter, for child's benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

I. PROCEDURAL HISTORY

The application for benefits, filed on March 1, 2016, alleged that D.J.[2] has been disabled since July 5, 2015. R. 152−57. The application was denied initially and upon reconsideration. R. 87−89, 94−97. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 101−05. Administrative Law Judge ("ALJ") Frederick Timm held a hearing on October 10, 2018, at which Plaintiff, who was represented by counsel, testified. R. 33−64. In a decision dated January 4, 2019, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act since March 1, 2016, the date the application was filed. R. 10−22. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 10, 2019. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 25, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 19.[3] On August 26, 2020, the case was reassigned to the undersigned. ECF No. 20. The matter is now ripe for disposition.

II. LEGAL STANDARD

A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[2] For purposes of clarity, and consistent with the terminology used at the administrative hearing, the Court will refer to D.J. as "Claimant."

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

5

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a three-step sequential evaluation process for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)–(d). The plaintiff has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically or functionally equals the requirements of a Listing, and that also meets the duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a listing, the ALJ considers all the

evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

Finally, the ALJ uses a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

### III. ALJ DECISION AND APPELLATE ISSUES

The Claimant, born on May 10, 2010, was five years old on her alleged disability onset date of July 5, 2015. R. 13, 65, 159. The Claimant was therefore a preschooler on March 1, 2016, the date on which the application was filed, and was a school-age child at the time the decision was issued. R. 13. At step one, the ALJ found that the Claimant had not engaged in substantial gainful activity since March 1, 2016, the application date. *Id*.

At step two, the ALJ found that the Claimant suffered from the following severe impairments: asthma, congenital heart disease, speech and language impairment and attention deficit hyperactive disorder ("ADHD"). *Id*.

At step three, the ALJ found that the Claimant did not suffer an impairment that met or medically equaled the severity of any Listing. *Id*. The ALJ also found that the Claimant does

not have an impairment or combination of impairments that functionally equaled the severity of the Listings. R. 13–21. Specifically, although the ALJ found that the Claimant had a "marked" limitation in the domain of acquiring and using information, the ALJ also found that the Claimant had less than marked limitations in attending and completing tasks, in interacting and relating with others, in moving about and manipulating objects, in caring for herself, and in health and physical well-being. R. 16–21.

Based on the foregoing analysis, the ALJ concluded that the Claimant has not been disabled within the meaning of the Social Security Act since March 1, 2016, the date on which the application was filed. R. 21.

Plaintiff disagrees with the ALJ's findings at step three and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law*, ECF No. 11; *Plaintiff's Reply Brief,* ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

## IV.   DISCUSSION

Plaintiff raises several challenges to the ALJ's findings at step three of the sequential evaluation relating to Plaintiff's claim for child's benefits, including the ALJ's conclusion that the Claimant's impairments are not the functional equivalent of a Listing. *Plaintiff's Memorandum of Law*, No. 11, pp. 7–21; *Plaintiff's Reply Brief*, ECF No. 18, pp. 2–7. Plaintiff specifically argues, *inter alia*, that the ALJ erred when she ignored a teacher questionnaire and

9

found a "less than marked" limitation in the domain of attending and completing tasks and a "marked" limitation, rather than an "extreme" limitation, in the domain of acquiring and using information. *Id*. As previously noted, the ALJ found that Plaintiff had a "marked" limitation in the domain of acquiring and using information but "less than marked" limitations in the remaining five domains. R. 16–21. In order to qualify for benefits on the basis of impairments that functionally equal a Listing, then, Plaintiff must establish that the Claimant had a "marked" limitation in one of the five other functional domains or one "extreme" limitation in any one of the six functional domains. 20 C.F.R. § 416.926a(d).

The domain of acquiring and using information assesses how well a child acquires or learns information and how well the child uses the information that the child has learned. 20 C.F.R. § 416.926a(g). As noted by the ALJ,

> Social Security rules provide that a preschooler (i.e., a child age 3 to attainment of age 6) without an impairment should begin to learn and use the skills that will help her to read and write and do arithmetic when she is older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what she means, and tell stories allow the child to acquire and share knowledge and experience of the world around her. The child should be able to understand the order of daily routines (e.g., breakfast before lunch), understand and remember her own accomplishments, and begin to understand increasingly complex concepts such as time, as in yesterday, today, and tomorrow. All of these are called "readiness skills," and the child should have them by the time she begins first grade (20 CFR 416.926a(g)(2)(iii) and SSR 09-3p).

> Social Security rules that a school-age child (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what she has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child

> should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others (20 CFR 416.926a(g)(2)(iv) and SSR 09-3p).
>
> Social Security regulation 20 CFR 416.926a(g)(3) and SSR 09-3p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time ( e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what she means.

R. 16–17. The ALJ found that the Claimant had a marked limitation in acquiring and using information. R. 17.

The domain of attending and completing tasks assesses how well a child is able to focus and maintain attention and also assesses how well the child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child changes them. 20 C.F.R. § 416.926a(h). As noted by the ALJ,

> Social Security rules provide that a preschooler without an impairment should be able to pay attention when she is spoken to directly, sustain attention to her play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. The child should also be able to focus long enough to do many more things independently, such as gathering clothes and dressing, feeding, or putting away toys. The child should usually be able to wait her turn and to change her activity when a caregiver or teacher says it is time to do something else. The child should be able to play contentedly and independently without constant supervision (20 CFR 416.926a(h)(2)(iii) and SSR 09-4p).
>
> Social Security rules provide that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework

11

> assignments. The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read by herself, and complete family chores. The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation (20 CFR 416.926a(h)(2)(iv) and SSR 09-4p).
>
> Social Security regulation 20 CFR 416.926a(h)(3) and SSR 09-4p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones she is capable of completing; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, manage time, or organize self in order to complete assignments or chores.

R. 17–18. The ALJ went on to find that the Claimant had a "less than marked" limitation in this domain, reasoning as follows:

> The claimant has less than marked limitation in attending and completing tasks. The claimant was able to complete testing in various sessions and, as noted above, to complete tasks cooperatively. Testing noted an overall impression of low average skills. However, the record also notes a need for redirection and possible use of medication and other treatments for ADHD.

R. 18.

Plaintiff contends that the ALJ erred in making these findings in the domains of acquiring and using information and attending and completing tasks because the ALJ never mentioned, and therefore apparently never considered, a teacher questionnaire completed by the Claimant's first grade teacher, Melissa Sparacio, and school counselor, Patricia Fredrick, on October 13, 2016 ("the 2016 Teacher Questionnaire"). *Plaintiff's Memorandum of Law*, No. 11, pp. 20–21;

12

*Plaintiff's Reply Brief*, ECF No. 18, pp. 4–7; *see also* R. 195–202 (copy of the 2016 Questionnaire). The 2016 Teacher Questionnaire is a form issued by the Social Security Administration's Division of Disability Determination Services and directed to the Claimant's school, Holly Heights. R. 195–202. Ms. Sparacio and Ms. Fredrick indicated that they had known the Claimant for two months at the time the 2016 Teacher Questionnaire was completed; they saw Plaintiff six hours a day, teaching her reading, writing, math, social studies, and science. R. 195. Ms. Sparacio and Ms. Fredrick indicated that the Claimant's reading, math, and written language levels measured below her grade level, and that her reading level measured at the level of a prereader. *Id*. In the domains of acquiring and using information and attending and completing tasks, Ms. Sparacio and Ms. Fredrick used a rating scale from 1 to 5, with 1 indicating "no problem," 2 indicating "slight problem," 3 indicating "obvious problem," 4 indicating "serious problem," and 5 indicating a "very serious problem." R. 196–97. They concluded that the Claimant had problems functioning in these domains. *Id*. Specifically, they indicated that the Claimant had a "very serious problem" (a score of 5) in all ten activities[4] under the domain of acquiring and using information, R. 196, and that the Claimant had a "very serious problem" on an hourly or daily basis in six of the thirteen activities in the domain of attending and completing tasks[5] and a "serious problem" (score of 4) on an hourly or weekly basis in two

---

[4] These ten activities are as follows: comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequation descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. *Id*.

[5] The six activities in which the Claimant had a "very serious problem" are paying attention when spoken to directly (daily problem), carrying out single-step instructions (hourly problem), carrying out multiple-step instructions (hourly problem), completing class/homework assignments (daily problem), completing work accurately without careless mistakes (hourly problem), and working at a reasonable pace/finishing on time (hourly problem). R. 197.

activities[6] in that same domain. R. 197. Plaintiff argues that the ALJ improperly and inexplicably failed to consider this evidence, which establishes that the Claimant had an "extreme" limitation in the domain of acquiring and using information and that the Claimant had an "extreme" or at least "marked" limitation in the domain of attending and completing tasks. *Plaintiff's Memorandum of Law*, No. 11, pp. 20−21; *Plaintiff's Reply Brief*, ECF No. 18, pp. 4−7. Plaintiff argues that the ALJ's failure to consider the 2016 Teacher Questionnaire was therefore significant because such a finding in either of these domains would require a finding of disabled. *Id*.

     Plaintiff's arguments are well taken. The Social Security Administration considers "all evidence" in a case record in determining childhood disability, including information from nonmedical sources, such as teachers. 20 C.F.R. § 416.924a(a). To that end, the Social Security Administration "will ask for information from [a child's] teachers and other school personnel about how [the child is] functioning there on a day-to-day basis compared to other children [of the same] age who do not have impairments" and "will ask for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services, including home-based instruction, or any accommodations provided in a regular classroom." 20 C.F.R. § 416.924a(a)(2)(iii); *see also id*. at § 416.924a(b)(7)(ii) ("If you go to school or preschool, we will ask your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, including teacher questionnaires . . . ."); SSR 09-2p ("Evidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our

---

[6] The two activities in which the Claimant had a "serious problem" are sustaining attention during play/sports activities (weekly problem) and working without distracting self or others (daily problem). R. 197.

14

understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning. These sources include . . . educational personnel (for example, teachers[).]"). Notably, as "[n]on-medical sources[,]" teachers and school counselors are "valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p.

Here, the ALJ never even mentioned the 2016 Teacher Questionnaire in his written decision. R. 10–22. However, the ALJ expressly considered and assigned "significant weight" to two other teacher questionnaires, completed in 2018 by teachers Amy Viso and Niccole Engston ("the 2018 Teacher Questionnaires"):

> As for the opinion evidence, Amy Viso, a teacher, opined that the claimant has obvious to serious problems in acquiring and using information, some problems in attending and completing tasks, and no other limitations; difficulty with concentration and delayed skills were noted (Ex. 18E, pgs. 1-7). A very serious problem in comprehending and doing math problems and serious problems in most other acquiring and using information tasks, along with daily problems attending and completing tasks, were noted in a form appearing to be writing by Niccole Engston, another teacher, in October 2018 (Id., pgs. 8-15). These opinions are given significant weight, as they are generally consistent with the medical evidence of record.

R. 15; *see also* R. 258–74 (copies of the 2018 Teacher Questionnaires). It appears that the ALJ failed to consider the 2016 Teacher Questionnaire, *i.e.,* evidence that supported findings of an "extreme" limitation in the domain of acquiring and using information and a "marked" or "extreme" limitation in the domain of attending and completing tasks. At a minimum, the ALJ failed to explain why he accorded less weight to this evidence as compared to the 2018 Teacher Questionnaires. Under these circumstances, the Court cannot conclude that substantial evidence supports the ALJ's findings in connection with these two domains. *See Jones v. Barnhart*, 364

15

F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *K.K. on behalf of K.S. v. Comm'r of Soc. Sec.*, No. CV 17-2309, 2018 WL 1509091, at *8 (D.N.J. Mar. 27, 2018) ("20 C.F.R. § 416.924a(b)(7)(ii) mandates that the ALJ consider all the evidence in the record from the claimant's schools."); *Jones v. Berryhill*, No. CV 16-6393, 2017 WL 4170353, at *6–7 (E.D. Pa. Sept. 20, 2017) ("Because [the ALJ] failed to explain why the evidence she referenced supported her decision and failed to explain why she rejected conflicting, probative evidence, her decision as to the functional domain of 'attending and completing tasks' is not supported by substantial evidence."); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

      The Commissioner responds, *inter alia*, that Plaintiff's reliance on "statements from her . . . first grade teacher and school counselor is meritless" and that the ALJ's consideration of the 2018 Teacher Questionnaires properly supported his decision. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 17−20. The Commissioner's argument in this regard is not well taken. As previously discussed, teachers are a valuable source of information for the ALJ to consider. 20 C.F.R. § 416.924a(a)(2)(iii), (b)(7)(ii); SSR 09-2p; SSR 06-03p; *K.K. on behalf of K.S.*, 2018 WL 1509091, at *8. The ALJ's apparent failure to consider the 2016 Teacher Questionnaire, while granting "significant weight" to the 2018 Teacher Questionnaires, renders impossible meaningful review by this Court. *See Jones*, 364 F.3d at 505; *see also Reilly v. Saul*, 498 F. Supp. 3d 688, 698 (E.D. Pa. 2020) ("[A]n ALJ may not 'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions.'") (quoting *Middlemas v.*

16

*Astrue*, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009)). Finally, to the extent the Commissioner justifies the ALJ's omission and reliance on the 2018 Teacher Questionnaires by means of reasoning not articulated by the ALJ, the Commissioner's *post hoc* rationalization in this regard must be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted). Under all these circumstances, the Court concludes that the matter must be remanded for further consideration of this issue.[7]

It may very well be that, upon further consideration of the 2016 Teacher Questionnaire, the ALJ and the Commissioner will again conclude that Plaintiff does not have an "extreme" limitation in the domain of acquiring and using information or a "marked" or "extreme" limitation in the domain of attending and completing tasks and, therefore, does not have an

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the 2016 Teacher Questionnaire and whether Plaintiff functionally equals a listed impairment, the Court does not consider those claims.

impairment or combination of impairments that functionally equals a Listing for purposes of child's benefits. That determination, however, is for the Commissioner–not this Court–to make in the first instance.

### V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  July 22, 2021                    *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE